UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


William Edmondson


          v.                              Civil No. 05-cv-445-JD


Stephen J. Curry, Commissioner,
New Hampshire Department of
Corrections, et al.[1]


## O R D E R


Before the Court is William Edmondson's complaint, filed
pursuant to 42 U.S.C. § 1983 (document no. 1) and his motion for
court-appointed counsel (document no. 6).[2]  Edmondson has alleged
a violation of his First Amendment right not to be subjected to
the establishment of religion caused by religious content in the
Sexual Offender Program ("SOP") at the New Hampshire State Prison

_____

[1]Edmondson names the following additional defendants to this
action: New Hampshire State Prison ("NHSP") Warden Bruce Cattell,
former NHSP Sexual Offender Program ("SOP") Director Irene
McCormack, SOP therapists Judy Mann, Ruth Kevghas, Kimberly
March, and Norman Smith, and Dr. Keith Courtney.

[2]Edmondson has also filed a motion for an emergency
preliminary injunction (document no. 7).  That motion has been
referred to me by the District Judge (document no. 8) for a
recommended disposition.  In a Report and Recommendation issued
simultaneously with this Order, I recommend that emergency
preliminary relief be denied.

("NHSP").  Edmondson has also alleged a violation of his First Amendment right to petition the government for a redress of grievances, in that he claims that he was terminated by the SOP in retaliation for his testimony and involvement in a lawsuit challenging the religious content of the SOP.  The matter is before me for preliminary review to determine, among other things, whether or not the complaint states any claim upon which relief might be granted.  For the reasons stated herein, I find that it does, and I direct that the complaint be served on defendants Curry, Cattell, McCormack, Mann, Kevghas, Marsh, Courtney, and Smith in accordance with the instructions at the conclusion of this order.

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action *pro se* and *in forma pauperis*, the magistrate judge is directed to conduct a preliminary review and to either direct service of the complaint against one or more of the defendants, or to prepare a report and recommendation advising the district judge that the complaint or some portion thereof should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim

2

upon which relief may be granted, or seeks monetary
relief from a defendant who is immune from such
relief under 28 U.S.C. § 1915A(b); or

(ii) it fails to establish subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1).

United States District Court for the District of New Hampshire
Local Rule 4.3(d)(2)(A).  In conducting the preliminary review,
the Court construes *pro se* pleadings liberally.  See Ayala
Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990)
(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe
*pro se* pleadings liberally in favor of the *pro se* party).  "The
policy behind affording *pro se* plaintiffs liberal interpretation
is that if they present sufficient facts, the court may intuit
the correct cause of action, even if it was imperfectly pled."
Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert.
denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions
made by the plaintiff and inferences reasonably drawn therefrom
must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3
(1st Cir. 1996) (stating the "failure to state a claim" standard
of review and explaining that all "well-pleaded factual
averments," not bald assertions, must be accepted as true).
Application of this standard ensures that *pro se* pleadings are

given fair and meaningful consideration.  See <u>Eveland v. Dir. of</u>
<u>C.I.A.</u>, 843 F.2d 46, 49 (1st Cir. 1988).

<u>Background</u>

William Edmondson joined the SOP at the NHSP in December of
2003.  Edmondson participated in the SOP programming and
successfully progressed through the stages of the program until
the spring of 2005.  In March of 2005, Edmondson was subpoenaed
to testify at a hearing held in this Court pertaining to a
lawsuit filed by another inmate, Randy Duquette, objecting to the
religious content of the SOP.  Edmondson testified at the
Duquette hearing that the SOP materials contained religion and
spirituality that was tantamount to religious indoctrination.[3]
Edmondson also claims that other religious and spiritual
teachings were routinely included in the SOP programming, and
that although some of the SOP practices have changed, religious
and spiritual content that Edmondson does not wish to participate
in continues to be included in the SOP materials and programs.

_____

[3]Edmondson's complaint alleges that, ostensibly as a result
of Duquette's lawsuit, the SOP was forced to place warning labels
on materials that would possibly contain spiritual or religious
references, and SOP participants were forced to sign a disclaimer
indicating that they were aware that such publications might be
used and that they could object to their use if they chose.

4

At the March 2005 hearing in the Duquette suit, Edmondson advised the Court that he feared he would be terminated from the SOP in retaliation for his testimony.  Edmondson stated that he had received threats to that effect from SOP Director Irene McCormack, SOP counselors Judy Mann, Kim Marsh, Ruth Kevghas, and Norman Smith, and inmate facilitator Gary Fecteau.

On April 9, 2005, Edmondson told McCormack that he objected to being forced to participate in "faith-based" programming in the SOP.  Edmondson included in his objection, but did not limit his objection to, spirituality in his maintenance contract, which is a contract created by Edmondson and is for him to live by after he leaves the SOP.  The creation of a maintenance contract is a final step in the SOP prior to an inmate graduating from the program.  Edmondson alleges that in the spring and summer of 2005, he completed all of the stages of the SOP and was working on completing his maintenance contract.  McCormack responded to Edmondson and told him that he would not be required to complete the spirituality section of his maintenance contract if he did not want to.

Edmondson alleges that on July 1, 2005, he was "placed on contract," a mechanism by which SOP staff requires an inmate to

comply not only with the SOP program requirements but also with
any special requirements included in the contract or be
terminated from the program.  An inmate is placed on contract in
response to a serious problem in the inmate's progress in the
SOP.  The contract document, signed by Kevghas and Marsh, which
is attached to Edmondson's complaint, states that he was placed
on contract for "spreading malicious rumors" about other members
of the SOP community, and for engaging in aggressive and
sexualized horseplay in his cell by flicking another inmate on
the nipple in order to inflict pain on the inmate.  Further,
Edmondson was advised he would need to address "victim stancing,"
"holding resentments," and other "aggressive behaviors" in order
to successfully progress through the SOP.  Edmondson alleges that
the charges in the contract are at least partly fabricated or
exaggerated, and that the contract was issued in retaliation for
his testimony about problems with religious material at the SOP,
and not as a result of any maladaptive behavior on his part.

     Edmondson alleges that he was terminated from the SOP on
July 27, 2005, nine days prior to his scheduled graduation.
Edmondson's notice of termination was signed by Kevghas, Mann,
McCormack, Courtney, and Smith.  Edmondson's termination notice

6

stated that he was terminated for, among other things, breaching his original treatment contract, signed upon his admission to the SOP, by disclosing information about another SOP inmate outside of the SOP program.  The letter claims that the termination was necessary because this was not the first instance in which Edmondson had violated confidentiality.  The first instance alleged by the SOP staff related to the incident involving sexual conduct between two inmates that had been part of the stated reason for Edmondson being placed on contract.  Edmondson alleges that he was terminated after he had completed the substantive work of the program in retaliation for his involvement in the Duquette lawsuit and his testimony concerning SOP practices. Edmondson appealed the complaints raised here to both Warden Cattell and Commissioner Curry who denied his appeals and failed to take any action to correct the wrongs alleged by Edmondson in response to his grievances.

In November of 2005, Edmondson was denied parole because he had not completed the SOP.  Edmondson was told by the parole board that he would have to complete the SOP in order to be considered for release on parole.[4]

---

[4]The terms of Edmondson's termination from the SOP permitted Edmondson to apply for readmission to the program six months

7

<u>Discussion</u>

1.   <u>Establishment Clause Claim</u>

The Establishment Clause of the First Amendment to the
United States Constitution prohibits the government from coercing
anyone to support or participate in religion or its exercise.
<u>Lee v. Weisman</u>, 505 U.S. 577, 587 (1992).  The provisions of the
First Amendment are made applicable to the states through the
Fourteenth Amendment.

> "[T]he type of coercion that violates the Establishment
> Clause need not involve either the forcible subjection
> of a person to religious exercises or the conditioning
> of relief from punishment on attendance at church
> services. . . . Coercion is also impermissible when it
> takes the form of 'subtle coercive pressure' that
> interferes with an individual's 'real choice' about
> whether to participate in worship or prayer."

<u>DeStefano v. Emergency Hous. Group, Inc.</u>, 247 F.3d 397, 412 (2d
Cir. 2001) (internal citations omitted); <u>see</u> <u>Rutan v. Republican</u>
<u>Party of Ill.</u>, 497 U.S. 62, 77-78 (1990) ("What the First
Amendment precludes the government from commanding directly, it
also precludes the government from accomplishing indirectly.").
Conditioning parole eligibility or risk status on attendance at a
faith-based rehabilitation program constitutes coerced religious
involvement.  <u>Kerr v. Farrey</u>, 95 F.3d 472, 480 (7th Cir. 1996).

---

after the effective date of the termination.

Edmondson has alleged that as a participant in the SOP, he was forced to use materials that were religious or faith-based. Edmondson alleges that the SOP programming involved scriptural quotes being posted in public places, a twelve-step program that utilized the idea of a "higher power" and prayer.  Edmondson further alleges that his participation in and completion of the SOP is essential to his being granted parole.

I find that Edmondson has made a *prima facie* showing that the SOP used faith-based principals in the program by incorporating references to a higher power, to spirituality, to God, and to the Bible.  I further find that Edmondson has made a *prima facie* showing that the parole board's requirement that Edmondson complete SOP before being considered for parole is coercive in that Edmondson could reasonably feel that he had to participate in faith-based programming in order to be granted parole.  Accordingly, I find that Edmondson has sufficiently alleged an Establishment Clause claim against the SOP staff to allow the claim to proceed against defendants McCormack, Mann, Kevghas, Marsh, and Smith.

2.   <u>Retaliation/Right to Petition the Government for a Redress</u>
     <u>of Grievances</u>

The First Amendment's guarantee of a right to petition the
government for a redress of grievances has been characterized as
"among the most precious of the liberties safeguarded by the Bill
of Rights." <u>United Mine Workers v. Ill. State Bar Ass'n</u>, 389
U.S. 217, 222 (1967).  The right of petition, in the prison
context, means that inmates must be "permit[ted] free and
uninhibited access . . . to both administrative and judicial
forums for the purpose of seeking redress of grievances against
state officers." <u>Sostre v. McGinnis</u>, 442 F.2d 178, 200 (2d Cir.
1971) (en banc), <u>cert. denied</u>, <u>Sostre v. Oswald</u>, 404 U.S. 1049
(1972).  "[I]ntentional obstruction of a prisoner's right to seek
redress of grievances is precisely the sort of oppression that .
. . section 1983 [is] intended to remedy." <u>Franco v. Kelly</u>, 854
F.2d 584, 588 (2d Cir. 1988) (internal quotations omitted).

A prisoner's right to petition the government for a redress
of grievances under the First Amendment precludes prison
officials from retaliating against a prisoner by punishing a
prisoner for actions he takes in the exercise of those rights.
See <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995).  While
prison officials may make policy that is reasonably related to

legitimate penological interests, even at the expense of certain
constitutional rights, Turner v. Safley, 482 U.S. 78, 89-90
(1987), "actions otherwise supportable lose their legitimacy if
designed to punish or deter an exercise of constitutional
freedoms." Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir.
1980) (citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir,.
1979)); see also Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993),
cert. denied, 512 U.S. 1209 (1994) (prison officials cannot
lawfully impose a disciplinary sanction against a prisoner in
retaliation for the prisoner's exercise of his constitutional
right). Retaliation can be inferred from the chronology of
events. See Ferranti, 618 F.2d at 892 (chronology of events
provided support for inference of retaliation); McDonald, 610
F.2d at 18 (same).

Edmondson alleges that the defendant SOP staff members
placed him on a contract and terminated him from the SOP in July
of 2005 in retaliation for his involvement and testimony in a
lawsuit that accused the SOP of unconstitutional practices.
Edmondson claims that his testimony in court hearings during the
spring of 2005 resulted in animosity and threats against him, and
his mistreatment by the SOP staff. Ultimately, Edmondson alleges

that this mistreatment took the form of placing him on contract and ultimately terminating him from the SOP when he had completed the treatment work and was days from graduation.  For purposes of preliminary review, I find that the chronology of events alleged by Edmondson, combined with the animosity and mistreatment he alleges occurred as a direct result of his testimony in a lawsuit concerning religion in SOP programming, sufficiently to state a claim for a violation of Edmondson's First Amendment right to petition the government for a redress of grievances.  Accordingly, I find that the allegations in Edmondson's complaint are sufficient to state a retaliation claim against all of the named defendants in their individual capacities.

3.   <u>Official Capacity Suit</u>

Edmondson has named Commissioner Curry and Warden Cattell as defendants to this action in both their individual and official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought pursuant to 42 U.S.C. § 1983.  <u>See</u> <u>Puerto Rico Aqueduct &</u> <u>Sewer Auth. v. Metcalf & Eddy, Inc.</u> 506 U.S. 139, 146 (1993)

(Eleventh Amendment bars all suits in federal court against states or their agencies); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that § 1983 does not override the Eleventh Amendment and that the state is not a person within the meaning of § 1983).  Accordingly, I construe this complaint as suing Curry and Cattell only in their individual capacities.

4.   Supervisory Liability

        Edmondson names Cattell and Curry in this action in their individual supervisory capacities.  "Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions."  Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted).  A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation."  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization."  Id. at 44.  Both Cattell's and Curry's failure to act on the appeals bringing the issues raised herein to their attention can be construed as conduct that amounts to authorization and condonation of the improper

retaliation alleged.  Accordingly, I will allow this action to proceed against both Cattell and Curry in their individual supervisory capacities.

5.  <u>Motion to Appoint Counsel</u>

Edmondson has filed a motion to appoint counsel in this matter (document no. 6).  Edmondson alleges that he is unable to afford counsel to assist him in this matter.  There is no absolute constitutional right to free legal representation in a civil case.  <u>Bemis v. Kelley</u>, 857 F.2d 14, 15 (1st Cir. 1988).  Rather, appointment of counsel in a civil case is left to the discretion of the court.  <u>See</u> 28 U.S.C. § 1915(d).  An indigent litigant must demonstrate that exceptional circumstances exist to justify appointment of counsel, such that without counsel the litigant most likely would be unable to obtain due process of the law.  <u>DesRosiers v. Moran</u>, 949 F.2d 15, 23 (1st Cir. 1991); <u>Cookish v. Cunningham</u>, 787 F.2d 1, 2 (1st Cir. 1986) (*per curiam*).  In the case at hand, Edmondson has failed to establish the existence of such circumstances.  Edmondson's motion for counsel is therefore denied without prejudice to refiling in the future should circumstances warrant.

14

Conclusion

As I find that plaintiff has stated a claim upon which relief may be granted, I order that this action shall proceed against defendants Curry, Cattell, McCormack, Mann, Kevghas, Marsh, Courtney, and Smith.  I order the complaint (document no. 1) and motion to appoint counsel (document no. 6) to be served on Defendants.  The Clerk's office is directed to serve the New Hampshire Office of the Attorney General (AG), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document no. 1).  See LR 4.3(d)(2)(C).  Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf.  When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants.  The Clerk's office is instructed to complete service on these individuals by sending to

them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within thirty days of acceptance of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

James R. Muirhead
United States Magistrate Judge

Date: April 3, 2006

cc:  William Edmondson, *pro se*

16